# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1929 | **DATE** | 12/10/2003 |
| **CASE TITLE** | Wilson-McCray, et al. vs. Stokes, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER. Defendant's motion for summary judgment [01 C 1929 Docket No. 49; 01 C 5808 Docket No. 39] is granted in part. All of Wilson-McCray's claims against Birmingham and all cross-claims against Birmingham premised on agency theory are dismissed. Any claims premised on other theories remain for trial, as they were not addressed by Birmingham's motion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 12-11-03 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 13 |
| | Copy to judge/magistrate judge. | | | |
| | JD  courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA WILSON-McCRAY, Individually and as Mother and Next Friend of ANTHONY McCRAY, a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 01 C 1929 |
| JOHN R. STOKES, MELCO TRANSFER, INC, NATIONAL RAILROAD PASSENGER CORPORATION, ILLINOIS GENERAL RAILROAD COMPANY, SAFETRAN SYSTEMS CORPORATION, GENERAL ELECTRIC COMPANY, GENERAL SIGNAL CO., and BIRMINGHAM STEEL COMPANY, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DEBRA DOWE, Independent Administrator of the Estate of SHEENA DOWE, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 01 C 5808 |
| NATIONAL RAILROAD PASSENGER CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, | ) ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| BIRMINGHAM STEEL CORPORATION, MELCO TRANSFER, INC., and JOHN STOKES, | ) ) ) | |
| Third-Party Defendants. | ) | |

DOCKETED
DEC 1 1 2003



## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case results from the consolidation of two separate lawsuits brought by plaintiffs seeking recovery for injuries sustained while they were passengers on an Amtrak train that collided with a tractor-trailer in Bourbonnais, Illinois on March 15, 1999. In Case No. 01 C 1929, Angela Wilson-McCray has sued defendants John Stokes, Melco Transfer, Inc., National Railroad Passenger Corporation (also known as Amtrak), Illinois Central Railroad Company, Safetran Systems Corporation, General Electric Company, General Signal Company, and Birmingham Steel Company. She claims that the defendants' negligence and/or other wrongful acts were the cause of her injuries and those of her minor son. The defendants have filed cross-claims against one another for contribution. Defendants Illinois Central Railroad Company and Amtrak ("the Railroads") have filed a cross-claim against Birmingham Steel alleging that Birmingham is liable for the acts of John Stokes, the driver of the tractor-trailer, based on theories of agency and negligence.

In Case No. 01 C 5808, a number of plaintiffs have sued Amtrak to recover for their injuries (they have made parallel claims against the other defendants in state court). Amtrak, in turn, has asserted third party claims for contribution against Birmingham, Melco, Stokes, and Illinois Central.

Birmingham has moved for summary judgment as to Wilson-McCray's claims and the contribution claims. For the reasons stated below, the Court grants Birmingham's motion in part and denies it in part.

2

## Facts

Birmingham Steel manufactures steel reinforcing bar, commonly known as "re-bar." Gem City Steel purchases steel re-bar from Birmingham. Melco Transfer, Inc. is an independent contract carrier that employs drivers by way of lease agreements to haul goods for various companies. John Stokes is a truck driver who entered into an equipment lease agreement with Melco in 1998 pursuant to which he acted as a "leased driver" for Melco for certain deliveries. Also pursuant to their agreement, Stokes operated under Melco's authority with the Illinois Commerce Commission.

Birmingham Steel does not employ truck drivers to deliver its products. It entered into a Transportation Agreement with Melco in 1997, under which Melco, as an independent contract carrier, provided transportation services to ship products from Birmingham's Bourbonnais, Illinois plant to various locations around the country. Gem City ordered re-bar from Birmingham Steel, and arranged, through Melco, to have John Stokes pick up the load at Birmingham's plant for delivery to Gem City's facilities in Dayton, Ohio.

On March 15, 1999, Amtrak's train, The City of New Orleans, was traveling south from Chicago along the Illinois Central's main line railroad track, when it collided with the truck being driven by Stokes. Just before the collision, Stokes had picked up the re-bar that was to be delivered to Gem City from Birmingham's plant. Birmingham's facility is located approximately 242 feet to the west of the railroad tracks where the accident occurred.

Both Wilson-McCray and the Railroads contend that at the time of the accident, Stokes was acting as an agent of Birmingham and that Birmingham is therefore liable for any negligence or other wrongful acts committed by Stokes in this capacity. Wilson-McCray also alleges that

3

Birmingham overloaded the truck driven by Stokes; that Birmingham is liable for the placement of railcars located on siding tracks adjacent to its plant which supposedly obstructed Stokes' view of railroad traffic; and that Birmingham failed to provide Stokes "safe egress" from its facility. The Railroads also appear to claim that Birmingham committed negligent entrustment in allowing Stokes to haul the load because Stokes was an unsafe driver who was impaired due to insufficient rest and excessive hours of work. Finally, the Railroads appear to assert a claim against Birmingham under section 427 of the Restatement (Second) of Torts.

Birmingham filed a summary judgment motion directed toward the claims of Wilson-McCray as well as the cross-claims of the Railroads. The Railroads limited their response to their cross-claims against Birmingham. Wilson-McCray has simply adopted the Railroads' response even though the Railroads made it clear they were not addressing her claims against Birmingham. As a result, Wilson-McCray left unrefuted Birmingham's claims that it has no liability for the loading/overloading of Stokes' tractor trailer, the placement of the railcars involved in the collision, or its alleged failure to assist Stokes in safely leaving its facility. As a result, the Court grants summary judgment in favor of Birmingham on those claims. Consequently, this opinion will not address these claims.

With respect to the remaining claims, Birmingham contends that Stokes was not its agent, but rather was an independent contractor, and that as a result, it is not liable for any negligence on the part of Stokes. The cross-claims, however, include an allegation of direct negligence on Birmingham's part. Birmingham's summary judgment motion did not address that claim, and its discussion of the claim in its reply brief comes too late. Consequently, this opinion does not deal with the cross-claims' allegations of direct negligence by Birmingham.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must construe the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *E.g., Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

Whether a particular relationship is that of principal and agent or rather an independent contractor relationship is a question of fact reserved to the jury unless the relationship is so clear as to be indisputable. *Perkinson v. Manion*, 163 Ill. App. 3d 262, 516 N.E.2d 977 (1987). Illinois courts generally consider five factors in determining if a principal-agent relationship exists: (1) the right to control the manner in which the work is performed; (2) the method of payment, including deductions for taxes, insurance, etc.; (3) the level of skill required to perform the work; (4) the furnishing of necessary tools, materials or equipment; and (5) the right to discharge. *Shoemaker v. Elmhurst-Chicago Stone Co., Inc.*, 273 Ill. App. 3d 916, 652 N.E.2d 1037 (1994); *Davis v. Industrial Comm'n*, 261 Ill. App. 3d 849, 852, 634 N.E.2d 1117, 1119 (1994). An independent contractor is one who renders service in the course of an occupation and represents the will of the person for whom the work was done only with respect to the result and not the means by which that result is accomplished. *Perkinson*, 163 Ill. App. 3d at 266, 516 N.E.2d at 981. One who hires an independent contractor is generally not liable for the negligent or intentional acts or omissions of the contractor. *Gomien v. Wear-Ever Aluminum, Inc.*, 50 Ill. 2d 19, 21, 276 N.E.2d 336, 338 (1971); *Lang v. Silva*, 306 Ill. App. 3d 960, 715 N.E.2d 708

5

(1999); *Kouba v. East Joliet Bank*, 135 Ill. App. 3d 264, 481 N.E.2d 325 (1985). If the person for whom the service was rendered retains the right to control the details of the work and the method or manner of its performance, the relationship of employee and employer exists. *Kouba*, 135 Ill. App. 3d at 267, 481 N.E. 2d at 328.

The Railroads contend that Stokes was acting as an agent of Birmingham at the time of the collision between the truck Stokes was driving and the Amtrak train. They argue that Birmingham retained the right to control the behavior of Stokes through a set of written rules which Stokes was required to follow; Stokes had a long-time relationship with Birmingham, pursuant to which he performed all of their oversized re-bar hauling; and Birmingham had the right to discharge Stokes. Defendants contend, however, that the evidence presented by the Railroads would not permit a finding that Birmingham retained the right to control Stokes. As a result, defendants contend, there is no genuine issue of fact regarding whether Stokes was an agent of Birmingham, and they are entitled to summary judgment on all claims premised on a theory of agency.

The Railroads argue that the evidence they have put forth creates a genuine issue of fact regarding whether Birmingham maintained the right to control Stokes. A principal-agent relationship exists where the principal has the right to control the manner and method in which the agent performs his work. *Lang*, 306 Ill. App. 3d at 972, *citing, Knapp v. Hill*, 276 Ill. App. 3d 376, 380, 657 N.E.2d 1068, 1071 (1995). The right to control the manner of doing the work is an important, if not the principal, consideration that determines whether the worker is an employee or an independent contractor. *Shoemaker*, 273 Ill. App. 3d at 920, *quoting Perkinson*, 163 Ill. App. 3d at 266. Birmingham argues that *Shoemaker* is controlling with respect to the

6

agency issue and compels a conclusion that it did not have an agency relationship with Stokes. The Court agrees.

*Shoemaker* involved a suit by the guardians of a ward who was injured in a vehicle collision involving a truck against a shipper, Elmhurst, for which the truck's driver performed the majority of his work. The trucker, Anderson, owned the truck and leased it to a trucking company, Lawrence Trucking. Because Anderson did not have an ICC permit, he entered into a lease agreement with Lawrence to use theirs. Lawrence obtained hauling jobs for Anderson and received five percent of the gross compensation. The majority of Anderson's work was done for Elmhurst at the direction of Lawrence. Anderson had no agreement with Elmhurst, and Elmhurst set no rules about how Anderson should drive his truck. Elmhurst did not pay Anderson directly and did not pay for any of his expenses.

Lawrence's owner testified at trial that if Elmhurst asked the company not to send a particular driver, he would comply with the request. Elmhurst's vice-president testified that Lawrence had hauled materials for Elmhurst for years. Elmhurst's central dispatch would call a trucking company and instruct it to send trucks the next day to one of Elmhurst's plants to pick up loads to deliver to customers. He further testified that when a truck driver arrived at one of Elmhurst's plants, the truck would be weighed and loaded. An Elmhurst employee sometimes assisted a truck driver in loading the truck, but the truck driver could load the truck himself. The driver would sign a load ticket and was sent on his way without any directions, unless directions had been provided by Elmhurst's customer. Elmhurst had no contact with the driver once he left the plant except when the driver returned the receipt that the customer signed upon receiving the delivery. Finally, he testified that Elmhurst did not have the right to discharge a truck driver. If a

complaint was received from a customer, Elmhurst would contact the trucking company and hope it would handle the problem. On the basis of these facts, the appellate court overturned a jury verdict against Elmhurst, holding that Anderson was an independent contractor.

The facts at issue here are remarkably similar to those in *Shoemaker*. As in *Shoemaker*, Stokes maintained a lease agreement with the carrier, Melco, under which Stokes leased his truck and his hauling services to Melco. Stokes operated under Melco's ICC permit and received his hauling assignments from Melco. He received a percentage of the gross compensation from Melco. At Melco's direction, Stokes did the majority of his hauling for Birmingham, but he also did work for at least one other company. Stokes received no compensation from Birmingham. Birmingham paid none of his expenses associated with operating the truck, nor did Birmingham set any rules regarding how Stokes should drive his truck.

Despite these similarities, the Railroads contend that *Shoemaker* is distinguishable. They argue that Stokes, unlike the driver in *Shoemaker*, had a written contract with Melco and no lease arrangements with any other trucking companies and that in *Shoemaker* the trucking company had no written agreement with the shipper, whereas Melco had a written agreement with Birmingham under which Melco exclusively assigned drivers and trucks to Birmingham. The Railroads further contend that unlike the shipper in *Shoemaker*, Birmingham had written rules governing the conduct of drivers, and that drivers were required to contact Birmingham in the event of a delay or an accident. Finally, the Railroads contend that the evidence establishes that Birmingham, unlike the shipper in *Shoemaker*, retained the right to discharge a driver based on a customer's complaint.

As a preliminary matter, the Railroad's assertion that the trucker in *Shoemaker* did not have a written agreement with the trucking company is erroneous. Anderson did in fact enter into a written lease agreement with Lawrence Trucking. *Shoemaker*, 273 Ill. App. 3d at 917-18, 922, 652 N.E. 2d at 1038, 1041. Moreover, whether Stokes had a written agreement with Melco has no bearing on whether he was an agent of Birmingham. The Railroads appear to be arguing that because Birmingham had an "exclusive" written agreement with Melco, who in turn had an "exclusive" written agreement with Stokes, that this makes Stokes an agent of Birmingham. This argument, however, in addition to finding no support in the law, is directly contradicted by the evidence. It is the actual conduct of the parties that determines whether one is an independent contractor or an agent. *Nanahan v. The Daily News-Tribune*, 50 Ill. App. 3d 9, 14, 365 N.E.2d 1045, 1049 (1977). In other words, whether Birmingham actually maintained the right to control Stokes' behavior is more indicative of the presence of a principal-agent relationship than the existence of any contracts between the parties. *See Tansey v. Robinson*, 24 Ill. App. 2d 227, 233-34, 164 N.E.2d 272, 275 (1960).

Moreover, the evidence reflects that Stokes hauled for shippers other than Birmingham. Stokes himself said as much, *see* Stokes Dep. at 62, and the Railroads acknowledge that on the day of the collision Stokes had been working on another job hauling fork lift trucks, *see* Railroad's Response to Birmingham's Statement of Facts ¶21.

Similarly, the written agreement between Melco and Birmingham did not establish or reflect that Birmingham had a right to control the way Stokes performed his job. The agreement provision regarding the assignment of trucks to Birmingham dealt with the timeliness of delivering goods, not the method by which these goods were to be delivered. In other words, this

9

provision merely specified the particular hauling task-i.e. delivery in a timely fashion- and did not control the manner in which this task is to be completed. *See Shoemaker*, 273 Ill. App. 3d at 921, 652 N.E.2d at 1041.

The Railroads argue that the volume of hauling that Stokes performed for Birmingham somehow created an agency relationship between the parties. They assert that Stokes deemed himself to be the "house truck" and considered himself to be on a "dedicated run." The suggestion that a contractor's volume of work for a particular entity can transform him into the company's agent is unsupported in Illinois law. Again, this does not seem to bear any relation to Birmingham's ability to control the manner in which Stokes made deliveries. Following this logic, a company that frequently ships via an entity like Federal Express would be liable for any wrongful acts of the Federal Express driver while delivering the company's packages. In any event, Stokes' "dedicated run" was for Gem City; he testified that it was Gem City's owner who selected him for this job. Stokes Dep. at 47-48.

The Railroads point to a so-called "Pick List" which they argue reflects that Birmingham had the authority to specifically request that Stokes be used for the delivery. The list purportedly contains Birmingham's request to "use Stokes." There is no indication on the list, however, of *who* made the request. Birmingham claims the request was made by Gem City. The fact that Stokes testified that he was friends with the owner of Gem City would tend to support Birmingham's claim. Stokes Dep. at 47-48. This information, that Birmingham was able to insist that Stokes be used, would indeed have some bearing on the agency question. However, absent some further indication of who actually made this request, the Railroad's bald assertion that it was Birmingham is simply not enough to create a genuine issue of material fact sufficient

to overcome summary judgment.

The Railroads also contend that Birmingham's on-site traffic rules and regulations reflect Birmingham's right to exercise control over Stokes. The Court disagrees. These rules merely affect operations on Birmingham's property regarding such safety procedures as speed limits, personal protective gear, and the ban on alcohol, firearms, and explosives. The rules had no bearing on Stokes' driving once he left the property. Moreover, even if these on-site safety rules did establish that Birmingham had control over Stokes, the fact remains that they only governed Stokes' behavior while he was on Birmingham's premises. As stated in the Preamble to the rules, they only applied to carriers "while operating on [Birmingham] property." At the time of the collision, Stokes was not subject to these rules and thus could not be deemed to have been under Birmingham's control. *See Shoemaker*, 273 Ill. App. 3d at 921, 652 N.E.2d at 1041 ("Elmhurst's weighing the truck and assisting or overseeing the loading of the truck were preliminary tasks necessary before the driver could begin to perform his job.")

The Railroads also argue that because Birmingham required that shipments within 500 miles be completed within 24 hours, and that drivers report collisions or accidents to Birmingham, evidences control over the drivers sufficient to establish an agency relationship. Again, however, these instructions merely go toward defining the ultimate task; they have no bearing on the way that task was completed. *Shoemaker*, 273 Ill. App. 3d at 921, 652 N.E.2d at 1041. Birmingham had an interest in making sure that its customers received their goods in a timely manner; and the fact that it monitored this process to ensure prompt delivery no more creates an agency relationship than does the designation of overnight delivery on a Federal Express package.

11

Finally, the Railroads argue that Birmingham retained the right to "discharge" drivers for failure to follow its rules, if it received a complaint, or if it thought the driver was unsafe. They cite to the deposition testimony of several members of Birmingham's management who essentially testified that they could, and in some circumstances did, refuse to load a driver's truck for various reasons. That is not the same, however, as the ability to hire or fire. In *Shoemaker*, the owner of Lawrence Trucking testified that if the shipper, Elmhurst, had told him not to send Anderson for a specific reason, he would have complied. *Shoemaker*, 273 Ill. App. 3d at 918, 652 N.E.2d. at 1039. Moreover, the former vice-president of Elmhurst testified that if he received a complaint about a particular driver, he would contact the trucking company and would hope the company would handle the problem. *Id.* at 919, 652 N.E. 2d at 1039. If the trucking company did not do so, Elmhurst would not hire the company again. *Id.* Despite this testimony, the court found that Elmhurst lacked the ability to hire or fire Anderson. In other words, even though Elmhurst had the ability to determine who could haul its goods this did not amount to the ability to hire or fire for purposes of establishing an agency relationship. The same rationale applies here. Birmingham's ability to refuse to load the truck of a particular driver cannot be considered a discharge, as Melco could simply assign that driver to haul for another company.

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment [01 C 1929 Docket No. 49; 01 C 5808 Docket No. 39] is granted in part. All of Wilson-McCray's claims against Birmingham and all cross-claims against Birmingham premised on agency theory are dismissed.

12

Any claims premised on other theories remain for trial, as they were not addressed by Birmingham's motion.

_____
       MATTHEW F. KENNELLY
       United States District Judge

Date: December 9, 2003